McKinney, J.,
delivered the opinion of the Court.
This bill was filed to enjoin a judgment for $1586.38, rendered against the complainants, as the sureties of one Joseph M. Dye, at the May term, 1858, of the circuit court of Montgomery. The Chancellor decreed for the complainants, and to reverse this decree, an appeal was prosecuted to this Court.
It appears that, on the 17th of May, 1852, said Joseph M. Dye was duly qualified as clerk of the circuit court of Montgomery ; and that, in addition to the several bonds executed by him as clerk, he likewise executed a bond, with the complainants as his sureties, in the penalty of twenty thousand dollars, pursuant to the act of 1849-50, ch. 51, sec. 2, with the condition, that “ the said Joseph M. Dye, clerk of the circuit court of Montgomery county, shall well and faithfully account for and pay over all such sums of money as shall come into Ms hands as Special Gommissioner,” &c.
The record shows that at the September term of said circuit court, 1855, a decree was made, on the petition of the defendant, Bowman, as the executor of one John Baker, dec’d, appointing and directing said Joseph M. Dye, “ clerk of said court,” to sell certain slaves, in the petition named, *680 at public auction, after giving three weeks notice, on a credit of twelve months, taking notes with good security for the purchase money. In obedience to this decree, said slaves were sold on the 13th day of October, 1855, by said Joseph M. I)ye; and notes with security were taken, payable to himself, twelve months after date, from the several purchasers.
On the 17th of May, 1856, the official term of Dye, as clerk, expired, and Charles Bailey was appointed his successor as clerk of said court.
The notes taken by Dye, on the sale of said slaves, did not mature until five months after the expiration of his term, and his retirement from said office. He retained said notes, however, and at their maturity, as is probable, or shortly afterwards, received into his ' hands the money due thereon and failed to pay over the same, or any portion thereof, but appropriated it to his own use; and being insolvent, as is alleged, the money is lost.
• At the January term of said circuit court, 1858, the defendant, Bowman, entered a motion for judgment against said Dye and his sureties, on the official bond before mentioned, for the money thus received by Dye, with'interest, &c. And at the May term following, judgment was entered accordingly.
To enjoin this judgment, is the object of the bill. The defendant submitted to answer, without any exception to the jurisdiction.
The complainants allege, and the fact is conceded, that they had no notice of the proceeding, by motion, in the court of law, and thereupon no defence was made. The ground of relief assumed is, that the money having been received by Dye, after the expiration of his term of office, the sureties cannot be held liable therefor, upon their bond.
The general principle asserted by the counsel of the complainants, that the sureties of a public officer are not liable for his acts, after the expiration of his term, or beyond the scope of the bond, is not controverted. But this is not the point to be considered.
*681 The argument for the complainant takes for granted that Dj'o received the money, as former cleric ; but this is assuming the very point in controversy. The question upon which the determination of the case depends, is this : are the offices of clerk and special commissioner to be regarded as one and the same office, under the statute, or as separate and distinct offices ? The solution of this question depends upon the construction of the act of 1849, before referred to.
The first section declares, in substance, that the clerks of the circuit, chancery, and supreme courts, “ when appointed by the court of which they are clerks, respectively, to act as special commissioners to sell property, under any decree of the court of which ho is clerk, or as receiver, shall, together with their securities, be liable under their bonds, for the faithful discharge of their official duties, executed by them under the act of 1794, ch. 1, section 2, for all such sums of money as may come into their hands by virtue of said appointment as special commissioner, or receiver.”
And by the second section, said clerks are required to execute additional bonds, with good security, in such sum as the court may deem sufficient, “ conditioned for the faithful accounting for, and paying over, of all such sums as may come into their hands, as such special commissioners.”
It had been determined by this court, in the case of Waters v. Carroll, 9 Yerg., 102, that where a clerk had been appointed by the court a receiver, and, as such, had received money, the sureties in his official bond were not responsible for it; and for the reason that the duties of receiver did not appropriately belong to the office of clerk.
To meet this case, and others falling within the same principle, the act of 1849 was probably passed. This statute does, in some sense, annex the office of receiver, and of special commissioner, to that of clerk ; but not so as to merge the former in the latter. The two offices are still distinct. The duties of the office of special commissioner are not made part of' the official duties of the office of clerk, as such. The court may appoint the person occupying the office of *682 clerk, as special commissioner; or a different person may still be appointed to that office, in the discretion of the court. And, in legal contemplation, the offices are as distinct, though filled by the same person, as if filled by different persons. The argument for complainant, that the office of special commissioner is made part of, or an appendage to, the office' of clerk, might seem, at first view, to derive some countenance from the provision contained in the first section, declaring that, in case of the appointment of the clerk to act as special commisioner, he and his sureties shall be liable under the official bonds executed by them under the act of 1794. But the force of this argument is obviated by the subsequent provision of the act, requiring a new and separate bond to cover the liability of the clerk when appointed to act as special commissioner; and under the latter provision, the bond, in the present case, ivas taken ; the condition is in exact conformity with the act.
In our view, the appointment as special commissioner, is distinct from the office of clerk, under the statute ; its duties do not appertain to the proper functions of the office of clerk. The appointment is not under the constitution, but under the authority conferred by the statute. The duration of the appointment is not limited by law. This is left to the discretion of the court, according to the exigencies of the various cases that may arise. And if the duration of the appointment be not limited, as to time, by the court, in the order of appointment, it follows, of course, that the appointment continues until the duties of the trust arc discharged. The special commissioner is properly a trustee ; and the condition of the bond obliges him to perform all the duties of the trust.
By the express terms of the condition he is bound faithfully to account for, and pay over, all such sums as may come into his hands as such special commissioner. Dye received the money,.in 1ns character of trustee, when it fell due ; and the relation of trustee continued to exist until the money was *683 accounted for and paid over, it could have no earlier termination.
Whether or not it was the duty of Dye, on retiring from the office of clerk, to hand over the notes to his successor ; and whether or not his doing so would have been a discharge of the trust; are questions not necessary to be now considered, inasmuch as he did not do so. If be had, the court might, doubtless, have appointed his successor to have finished the execution of the trust.
In this view, the judgment of the circuit court was correct. The 4th section of the act of 1849, expressly authorizes a judgment, by motion, in such cases ; and does not require any notice of the motion to be given.
It follows that the decree of the Chancellor is erroneous. It will be reversed and the bill dismissed.